UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICKY TOUZIN,                                                                        19 CV 4928

                             Plaintiff,                                      **COMPLAINT AND**
                                                             **DEMAND FOR JURY TRIAL**

    v.

TELEDATA SERVICES LLC and JOHN LITTEIRI,

                             Defendants.
------------------------------------------------------------X

Plaintiff RICKY TOUZIN, by and through his attorneys, DOLCE LAW PLLC, for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Ricky Touzin worked for Defendants' telecommunications equipment sales "startup" company from January 7, 2019 to April 7, 2019. Plaintiff typically worked at TeleData Services LLC five days a week for thirty hours a week. Defendants failed to pay the minimum wage in violation of the Fair Labor Standards Act, New York Labor Law, and federal and state labor regulations. In fact, Defendants failed to pay Plaintiff any wages at all. Furthermore, Defendants failed to provide Plaintiff with written notice of his wage rate or wage statements in violation of the New York Wage Theft Prevention Act.

2. During Plaintiff's entire employment with Defendants, Defendants paid Plaintiff merely a total of $225 in "bonuses." In violation of NYLL, Defendant failed to commit the agreement to pay Plaintiff commissions to writing and breached an agreement to provide Plaintiff with both base pay and commissions for his labor.

3. To challenge these and other wage violations, Plaintiff brings this action, by and through his attorneys, against TeleData Services LLC and its sole owner, to recover unpaid or underpaid wages, commissions, and other damages under the provisions of the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA") and the New York Minimum Wage Act, N.Y. Lab. Law, Art. 19, § 650, et seq. ("NYLL").

4. Furthermore, Defendants violated federal, state, and county law by discriminating against Plaintiff Touzin, a Black man. They subjected him to disparate treatment on the basis of his race by withholding pay from him while paying non-Black, similarly situated employees. Defendants' discriminatory actions caused Plaintiff significant harm. Plaintiff seeks damages and costs against Defendants for discriminating against him on the basis of his race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law 296; and the Suffolk County Human Rights Law ("SCHRL"), Suffolk County Regulatory Local Law § 528 et seq.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7. Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## JURY DEMAND

8. Plaintiff hereby demands a trial by jury.

## PARTIES

9. Plaintiff Ricky Touzin ("Plaintiff" or "Mr. Touzin") is a resident of Suffolk County, New York and a Black man. Mr. Touzin was employed by Defendants as an Account Manager from January 7, 2019 to April 7, 2019. At all relevant times, Mr. Touzin was an

"employee" within the meaning of all relevant statutes.

10. Defendant TeleData Services LLC ("TeleData") is a New York limited liability company headquartered at 67 Roosevelt Street, Islip Terrace, New York. At all relevant times, TeleData was an "employer" within the meaning of all applicable statutes, and an enterprise engaged in interstate commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

11. Upon information and belief, Defendant John Litteiri ("Litteiri") is a natural person residing in Suffolk County, New York and the owner of TeleData. Upon information and belief, Litteiri is the sole owner, officer, and member of Defendant TeleData. He is sued individually and in his capacity as owner, officer, and member of Defendant TeleData.

## FACTS

12. On November 19, 2018, Defendant Litteiri contacted Mr. Touzin by email regarding a potential job with his company. On November 29, 2018, Defendant offered Plaintiff base pay of $400 per week to start with an increase to $600 per week in three to six months and another increase to $1000 per week after one year.

13. On December 17, 2018, Litteiri offered to pay Mr. Touzin 25% commission combined with a "low weekly pay." He stated that he would begin providing Mr. Touzin with "weekly pay" after three to six months.

14. Plaintiff began working for Defendants as an Account Manager on January 7, 2019. When he began his employment with Defendants, Litteiri instructed Mr. Touzin to complete a Form W-9, Request for Taxpayer Identification Number and Certification. Defendants never provided Mr. Touzin with a written notice of wage rates.

15. As an Account Manager, Mr. Touzin's duties included calling businesses from a

call sheet provided by Litteiri, delivering a sales pitch, and sending emails to prospective customers. Throughout his employment with Defendants, Mr. Touzin typically worked Mondays through Fridays from 10 am to 4 pm.

16. Defendants misclassified Mr. Touzin as an independent contractor, when he was, as a matter of law and fact, an employee. In addition to the already stated facts, the following are indicia of Mr. Touzin's status as an employee under the common law:

a) Mr. Touzin was not hired to work for Defendants on a temporary basis, but rather for an indefinite period of time.

b) Mr. Touzin's work for Defendants was continuous and not intermittent.

c) Throughout his employment, Mr. Touzin worked and was physically present at TeleData offices at 270 Spagnoli Road, Suite 211, Melville, New York.

d) In performing services for Defendants, Mr Touzin used TeleData's tools and instrumentalities, including, but not limited to, its offices, telephones, furniture, clerical staff, computers and informational technology, proprietary information, and databases.

e) At all times, Mr. Touzin's work was controlled by Defendants, and his tasks were assigned to him by his supervisor, Litteiri.

f) Defendants had discretion over when and long Mr. Touzin worked.

g) The type of work Mr. Touzin performed, that is, attempting to sell telecommunications equipment and services, was an integral part of the regular business of TeleData.

h) Defendants retained the right to discharge Mr. Touzin.

17. Litteiri directed Mr. Touzin to create a company and register for a Business Certificate from Suffolk County before he began his employment in order to perpetrate the ruse

4

that Mr. Touzin was an independent contractor and not an employee.

18. Defendants misclassified Mr. Touzin as an independent contractor, in whole or substantial part, to avoid the cost of paying him at least minimum wage.

19. Two weeks after he started employment with Defendants, Mr. Touzin asked for the base pay that Defendant Litteiri has promised him. Litteiri responded by telling Mr. Touzin that he needed to "get more leads." In lieu of paying Mr. Touzin, he offered to give him a loan. He told him that he had to earn the base pay by getting two solid sales leads within the next two weeks.

20. Two weeks later, after Mr. Touzin has acquired two sales leads as instructed by Mr. Litteiri, he again asked Litteiri for the base pay that he had promised him. Mr. Litteiri dismissed his request and, on February 11, 2019, instead of paying Mr. Touzin offered him a loan of $100 to buy groceries.

21. On February 19, 2019, Mr. Litteiri gave Mr. Touzin a check for $150 to cover a $50 bonus for making 200 sales calls and a $100 bonus for a completed sales lead. In order to receive that amount, Litteiri directed Mr. Touzin to create an invoice for $150 from the company he had directed Mr. Touzin to create, Revered Communications. No wage statement was given with the check. Mr. Litteiri later asked Mr. Touzin to return the check. Mr. Touzin returned the check as requested and Litteiri instead gave him $150 in cash.

22. On February 21, 2019, when Mr. Touzin advised Litteiri that he was struggling financially and needed his pay, instead of paying Mr. Touzin, Mr. Litteiri directed him to apply for Supplemental Nutrition Assistance Program (SNAP) benefits, otherwise known as food stamps.

23. Mr. Touzin initiated one deal that closed in February and two others that, upon

information and belief, closed in March. Mr. Touzin never received any of the commissions that Mr. Litteiri promised him for those deals.

24. On March 1, 2019, Litteiri gave Mr. Touzin a check for $75 as a bonus for a lead he had obtained earlier. No wage statement was given with that check.

25. On April 7, 2019, Mr. Touzin informed Litteiri that, in large part due to financial difficulties, he could no longer continue to work for Defendants. Since then, Defendants have not paid any of the commissions that, upon information and belief, are due to have been paid to Mr. Touzin. Mr. Touzin has never received any wages, including the base pay that Litteiri promised him.

26. During his employment with Defendants, Mr. Touzin was the only Black employee of TeleData. Defendants provided all sales employees, except Mr. Touzin, with timesheets to record their hours of work. Upon information and belief, Defendants paid wages or commissions to all sales employees, except Mr. Touzin. Race and/or color was a motivating factor in Defendants' failure to pay Mr. Touzin.

**FIRST CAUSE OF ACTION**
(FLSA Minimum Wage Violations)

27. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

28. The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff was not exempt from the requirement that Defendants pay him the prevailing minimum wage under the FLSA. 29 U.S.C. § 206 (a)(1).

29. Defendants did not pay Plaintiff the prevailing minimum wage for any hours worked. As a result of their failure to pay Plaintiff the prevailing minimum wage for all hours

worked, Defendants violated the FLSA.

30. Plaintiff did not receive his paychecks on the prescribed paydays.

31. Because the employer failed to pay wages on the regular payment date, Plaintiff is entitled to liquidated damages. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2nd Cir. 1960); Arroyave v. Rossi, 296 Fed. Appx. 835, 836 (11th Cir. 2008).

32. At all relevant times, Defendants failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiff, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.

33. Defendants failed to post or keep posted conspicuous notices of Plaintiff's rights as required by the U.S. Department of Labor pursuant to 29 C.F.R. § 516.4, further evidencing Defendants' lack of good faith.

34. Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law. Defendants were aware, or should have been aware, that the practices described in this Complaint were unlawful.

35. Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid minimum wages, an additional equal amount in liquidated damages, attorneys' fees, costs, and interest. 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
(NYLL Minimum Wage Violations)

36. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

37. The NYLL requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff was not exempt

7

from the requirement that Defendants pay him the prevailing minimum wage under the NYLL. NYLL § 652 (1)(b).

38. During Plaintiff's employment with Defendants, Defendants willfully and intentionally failed to pay Plaintiff the prevailing minimum wage for any hours worked for Defendants.

39. As a result of Defendants' failure to pay Plaintiff the prevailing minimum wage for any hours worked, Defendants violated the NYLL.

40. By failing to pay him any wages at all for weeks and months at a time, the Defendants made deductions from the wages of Plaintiff other than those authorized under NYLL § 193. See also 12 N.Y. Comp. Codes R. & Regs. 142-2.10.

41. The foregoing conduct of Defendants constitutes willful violations of the NYLL.

42. Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid minimum wage, an additional amount in liquidated damages, attorneys' fees, costs, and interest. NYLL §§ 198.1-a and 663(1).

**THIRD CAUSE OF ACTION**
(NYLL Violations for Failure to Pay Wages)

43. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

44. NYLL § 191(c) requires covered employers, such as Defendants, to pay employees the wages and commissions earned with the requisite frequency in accordance with their agreed upon terms of employment. Plaintiff was not exempt from the requirement that Defendants pay him for all wages and commissions earned in accordance with his agreed terms of employment and not less frequently than monthly for his wages and commissions under the NYLL.

45. Throughout Plaintiff's employment with Defendants, Defendants did not pay Plaintiff his wages earned in accordance with the agreed terms of employment, and did not pay Plaintiff wages earned for any hours worked.

46. Throughout Plaintiff's employment with Defendants, Defendants did not pay Plaintiff his commissions earned in accordance with their agreement.

47. As a result of Defendants' failure to pay Plaintiff his wages and commissions earned in accordance with the agreed terms of employment and not less frequently than monthly, Defendants violated the NYLL.

48. The foregoing conduct of Defendants constitutes willful violations of the NYLL.

49. Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover the total amount of his unpaid wages and commissions earned in accordance with the agreed terms of employment, and an additional amount in liquidated damages, attorneys' fees and costs and interest.

**FOURTH CAUSE OF ACTION**
(NYLL Failure to Make Timely Payment of Wages)

50. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

51. Defendants failed and refused to pay Plaintiff, "not less frequently than once in each month," in violation of New York Labor Law § 191(1)(c).

52. Pursuant to NYLL § 191(2), "No employee shall be required as a condition of employment to accept wages at periods other than as provided in this section."

53. Pursuant to NYLL § 191(3), "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section."

9

54. Due to Defendants' New York Labor Law violations, Plaintiff has been damaged in amount as yet undetermined and is entitled to liquidated damages, reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
(NYLL Violation for Failure to Pay Sales Commissions)

55. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

56. During his employment with Defendants, Plaintiff was a commission salesperson as defined by NYLL.

57. NYLL § 191(c) requires covered employers, such as Defendants, to reduce to writing the agreed terms of employment for commission salespersons. That writing must be signed by both the employer and the commission salesperson and include a description of how wages, salary, drawing account, commissions and all other monies earned and payable will be calculated and provide details pertinent to payment of wages, salary, drawing account, commissions and all other monies earned and payable in the case of termination of employment by either party. An employer's failure to produce such written terms of employment gives rise to a presumption that the terms of employment that the commission salesperson has presented are the agreed terms of employment.

58. Defendants did not comply with the legal requirement to commit to writing the terms of employment and payment of commissions.

59. NYLL §191-c requires principals, such as Defendants, to pay salespersons all earned commission within five days of the termination of any contract between a principal and salesperson or within five days after the commission becomes due. Plaintiff was not exempt from the requirement that Defendants pay him for all commissions earned in accordance with the

terms of their agreement under the NYLL.

60. Defendants did not pay Plaintiff his commissions due in accordance with the terms of their agreement, within five business days after termination of employment, or after the commissions, upon information and belief, became due after termination.

61. As a result of Defendants' failure to pay Plaintiff his commissions due in accordance with the terms of their agreement and pursuant to NYLL §191-c, Defendants violated the NYLL.

62. The foregoing conduct of Defendants constitutes willful violations of the NYLL.

63. Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle him to recover double his unpaid commissions due in accordance with the terms of the agreement, in addition to attorneys' fees, costs and interest.

**SIXTH CAUSE OF ACTION**
(NYLL Notice and Record-Keeping Requirement Violation)

64. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

65. Defendants failed to supply Plaintiff notice as required by NYLL § 195(1)(a), in English or in the language identified by Plaintiff as his primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

66. Defendants failed to supply Plaintiff with an accurate statement of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

67. Due to Defendants' violations of NYLL § 195(1)(a), for each work day that Defendant failed to provide a proper wage notice at the time of hiring from January 7, 2019 through April 7, 2019, Plaintiff is entitled to damages of $50, or a total of $5,000, as provided for by NYLL § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

68. Due to Defendant's violations of N.Y. Lab. Law § 195(3), for each work day that Defendant failed to provide a proper wage statement from January 7, 2018 through April 7, 2019, Plaintiff is entitled to damages of $250, or a total of $5,000, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
(Race Discrimination in Violation of Section 1981)

69. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

70. Defendants have discriminated against Plaintiff on the basis of his race and/or color in violation of Section 1981 by subjecting him to disparate treatment, including denying him the same terms and conditions of employment available to employees who are not Black.

71. As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continue to suffer, monetary

and/or economic harm, including but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

72. Defendants' unlawful and discriminatory actions constitute willful, wanton and malicious violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
(Race Discrimination in Violation of NYSHRL)

73. Plaintiff hereby repeats, reiterates and realleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

74. Defendants have discriminated against Plaintiff on the basis of his race and/or color in violation of the NYSHRL by denying him equal terms and conditions of employment available to employees who are not Black.

75. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and expenses.

76. Defendants' unlawful and discriminatory actions constitute willful, wanton and malicious violations of NYSHRL for which Plaintiff is entitled to an award of punitive damages.

**NINTH CAUSE OF ACTION**
(Race Discrimination in Violation of SCHRL)

77. Plaintiff hereby repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

78. The Suffolk County Regulatory Local Law, Chapter 528, Article II §528-7(A)(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer to refuse to

hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence."

79. Defendants engaged in unlawful discriminatory practices in violation of Suffolk County Regulatory Local Law §528-7(A)(1) by denying Plaintiff, on the basis of his race, equal compensation, terms, conditions and privileges of employment equal to non-Black employees.

80. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Suffolk County Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages as well as reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION
(Breach of Contract)

81. Plaintiff hereby repeats, reiterates and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

82. Defendants entered into a binding agreement (the "Agreement") with Plaintiff to pay him base pay and commissions for his work.

83. The Agreement was supported by valuable consideration.

84. Defendants intentionally breached the Agreement by failing to pay Plaintiff the base pay and commissions due under the terms of the Agreement.

85. As a result of the breach, Plaintiff has suffered and continues to suffer pecuniary damages.

86. Accordingly, Defendants are liable for breach of contract.

87. Plaintiff is entitled to actual, compensatory, and expectation damages resulting from the breach of the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief from this Court:

a. A declaration that the practices complained of herein are unlawful under applicable federal, state, and county law;

b. Wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

c. Wages and liquidated damages permitted by law pursuant to the NYLL;

d. Double the commissions due pursuant to the NYLL and an award of reasonable attorney's fees, court costs, and disbursements as provided for by NYLL § 191-C;

e. Statutory damages for Defendant's violations of the notice and recordkeeping requirements pursuant to N.Y. Lab. Law § 195, reasonable attorneys' fees, costs and injunctive and declaratory relief as provided by N.Y. Lab. Law § 198;

f. An order and judgment awarding Plaintiff attorneys' fees, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, NYLL § 191-c, NYLL § 198, and other applicable statutes;

g. An order and judgment declaring that Defendants' discriminatory practices violate 42 U.S.C. §§ 1981, the New York State Human Rights Law, New York Executive Law § 290 et seq., and the Suffolk County Human Rights Law, Suffolk County Regulatory Local Law § 528 et seq.;

h. An order and judgment awarding monetary damages to compensate Plaintiff fully for any economic losses suffered due to Defendants' discriminatory conduct;

i. An order and judgment awarding punitive damages under Section 1981 and NYSHRL;

j. Actual, compensatory, and expectation damages resulting for breach of the Agreement and specific performance of the Agreement;

k. An order and judgment awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

l. Pre-judgment interest and post-judgment interest as provided by law;

m. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendant from continuing their unlawful practices; and

n. Such other relief as this Court shall deem just and proper.

Dated: Brooklyn, New York
August 28, 2019

                      DOLCE LAW PLLC

                      By: /s/ Wendy Dolce
                           Wendy Dolce (WD-4231)

                      44 Court Street
                      Suite 1217
                      Brooklyn, New York 11201
                      Telephone: (718) 571-9162
                      Facsimile: (718) 571-9164

                      *Attorneys for Plaintiff*